UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| ANDREW L. SCHLAFLY,<br><br>            Plaintiff,<br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, et al.,<br><br>            Defendants. | Civil Action No.<br>2:17-CV-02522-ES-SCM<br><br>**DEFENDANTS' MOTIONS FOR FEES AND COSTS**<br><br>**[D.E. 194]** |

## AMENDED REPORT AND RECOMMENDATIONS

**STEVEN C. MANNION**, United States Magistrate Judge.

      Before this Court are Defendants John Hancock Life Insurance Company ("John Hancock") and Lincoln National Life Insurance Company's ("Lincoln" and collectively "Insurers") motions for attorneys' fees and costs.[1] Third-Party Defendant Eagle Forum filed Oppositions,[2] and the Insurers replied.[3] The Honorable Esther Salas, U.S.D.J., referred the pending motions to the undersigned for a report and recommendation.[4] After considering the parties' submissions without oral argument and for the reasons set forth herein, the undersigned respectfully recommends that John Hancock and Lincoln's motions for fees and costs be **GRANTED**.

---

[1] (ECF Docket Entry ("D.E.") No. 156, John Hancock's Mot.; D.E. 172, Lincoln's Mot.).

[2] (D.E. 163, Eagle Forum Opp'n; D.E. 187, Eagle Forum Opp'n).

[3] (D.E. 189, Lincoln Reply; D.E. 187, John Hancock Reply).

[4] L. Civ. R. 72.1(a)(2).

## I. BACKGROUND AND PROCEDURAL HISTORY[5]

At issue in this removed action are the life insurance policy proceeds of decedent Phyllis Schlafly ("Ms. Schlafly"). According to Plaintiff, Andrew Schlafly ("Mr. Schlafly"), the members of Eagle Forum purchased life insurance policies on the life of Ms. Schlafly, from John Hancock and Lincoln. Eagle Forum is the designated beneficiary of the policies.[6]

Ms. Schlafly was the founder and leader of Eagle Forum, a non-profit membership corporation,[7] and passed away on September 5, 2016.[8] After her death, multiple members of Eagle Forum, including Mr. Schlafly and the Third-Party Defendants (collectively, the "Claimants"), have attempted to assume control over Eagle Forum and its assets, including the proceeds of the insurance policies.[9]

Mr. Schlafly contends that since Ms. Schlafly's death, Eagle Forum lacks a properly functioning board of directors and that the current membership "overwhelmingly" opposes the individuals "who claim to be in control of the Board of Directors."[10] He alleges that the people purporting to control Eagle Forum wrongfully dissipated assets and are attempting to take Eagle Forum in a direction other than its mission. To that end, over a dozen Claimants filed lawsuits in

---

[5] The allegations set forth within the pleadings and motion record are relied upon for purposes of these motions only. The Court has made no findings as to the veracity of the parties' allegations.

[6] (D.E. 44-2, Aff. of Mary Ngai, at ¶ 3).

[7] (D.E. 1, Am. Compl., at ¶ 11).

[8] (D.E. 1, Am. Compl., at ¶ 9).

[9] (D.E. 7, Lincoln Answer, at ¶¶ 49–58; D.E. 8, John Hancock Answer, at ¶¶ 33–44).

[10] (D.E. 1, Am. Compl., at ¶ 11–12).

Illinois, Missouri, and New Jersey, to contest which parties can assert control over and take actions on behalf of, Eagle Forum.[11]

On March 13, 2017, Mr. Schlafly filed his Complaint against Lincoln in New Jersey State Court, and on March 20, 2017, Mr. Schlafly filed his Amended Complaint, adding John Hancock as a Defendant.[12]

Lincoln removed the matter to federal court on April 12, 2017.[13] The Insurers filed their Answers, along with third-party complaints for interpleader relief against Eagle Forum and the other Claimants,[14] as well as motions to deposit the life insurance proceeds with the Court.[15] The Insurers concede that Eagle Forum is the proper beneficiary, but cannot determine whom -- if anyone -- at Eagle Forum is "authorized to receive the death benefits . . . and cannot determine to whom these should be paid."[16]

On May 5, 2017, the Court granted the Insurers' motions to deposit funds;[17] John Hancock deposited $1,422,000.02, and Lincoln deposited $2,000,000.00,[18] representing the proceeds of the

---

[11] (D.E. 7, Lincoln Answer, at ¶¶ 49–58; D.E. 8, John Hancock Answer, at ¶¶ 33–44).

[12] (D.E. 1, Am. Compl., at ¶ 20).

[13] (D.E. 1, Notice of Removal, at 1).

[14] (D.E. 8, John Hancock, Answer, at 7).

[15] (D.E. 9; D.E. 11).

[16] (D.E. 7, Lincoln Answer, at ¶ 64; D.E. 8, John Hancock Answer, at ¶ 49).

[17] (D.E. 12, Order).

[18] Lincoln deposited a total of $5,250,000.00. Lincoln waived its request for fees related to the other policies, which involved different beneficiaries, and which account for the remaining $3,250,000.00 (D.E. 172-2, at ¶ 10).

3

policies at issue, into the Registry of this Court.[19] Thereafter, the Insurers filed motions to dismiss and discharge all claims, and for an award of attorneys' fees and costs.[20] Eagle Forum initially opposed each motion,[21] but later withdrew its oppositions, except as to the requests for fees and costs.[22]

The Court reviewed these pending motions, denied them without prejudice, and instructed the parties to refile the motions as standalone filings, in order to present the remaining issues in a more efficient manner.[23] Consequently, the Insurers refiled their now unopposed motions to dismiss and discharge,[24] and the Court granted each of those motions.[25]

The only remaining motions are the renewed motions for attorneys' fees and costs.[26] Eagle Forum again opposed each motion,[27] and the Insurers filed replies.[28]

---

[19] (D.E. 23, John Hancock Proceeds Deposit; D.E. 27, Lincoln Proceeds Deposit).

[20] (D.E. 44, Mot. to Dismiss; D.E. 109, Mot. To Dismiss).

[21] (D.E. 81, Eagle Forum Opp'n).

[22] (D.E. 117, Stipulation).

[23] (D.E. 152, Order; D.E. 162, Order).

[24] (D.E. 155, John Hancock's Mot. to Dismiss; D.E. 173, Lincoln's Mot. To Dismiss).

[25] (D.E. 185, Order; D.E. 188, Order).

[26] (D.E. 156, John Hancock's Mot. for Att'y Fees; D.E. 172, Lincoln's Mot. for Att'y Fees).

[27] (D.E. 163, Eagle Forum Opp'n; D.E. 187, Eagle Forum Opp'n).

[28] (D.E. 166, John Hancock's Reply Br.; D.E. 189, Lincoln's Reply Br.).

## II.  LEGAL STANDARD

Under our jurisprudence, interpleader allows "a person holding property to join in a single suit two or more persons asserting claims to that property."[29] It allows a stakeholder who admits liability to one of the claimants, "but fears the prospect of multiple liability . . . to file suit, deposit the property with the court, and withdraw from the proceedings."[30] As a result, interpleader discharges the stakeholder from any further liability with respect to the disputed property, and the "competing claimants are left to litigate between themselves."[31]

Courts generally award attorney's fees and costs associated with interpleader to a plaintiff who is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge from liability."[32] "In such actions, a plaintiff is entitled to costs and reasonable attorney's fees out of the funds deposited with the court."[33]

One caveat, however, is that courts will only award attorney's fees to stakeholders who are the "target of a dispute which is not of [their] own making."[34] Stated differently, courts will not

---

[29] *Metro. Life Ins. Co. v. Price,* 501 F.3d 271, 275 (3d Cir. 2007).

[30] *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009).

[31] *Id.*

[32] *Metropolitan Life Ins. Co. v. Kubichek,* 83 F. App'x 425, 431 (3d Cir.2003).

[33] *Banner Life Ins. Co. v. Lukacin,* No. 13-6589, 2014 WL 4724902, at *3 (D.N.J. Sept. 22, 2014) (citing *Callwood v. V.I. Nat'l Bank,* 221 F.2d 770, 780 (3d Cir. 1955); *Prudential Ins. Co. of Am. v. Fantaye,* No. 08–3172, 2009 WL 482699, at *2 (D.N.J. Feb. 19, 2009)).

[34] *Id.* at *4; *see also Frontier Ins. Co. v. Mission Carrier, Inc.*, No. 91-5151, 1992 WL 209299, at *2 (D.N.J. Aug. 24, 1992).

award attorney's fees when a "stakeholder acts in a manner that creates disputed claims,"[35] or creates a dispute through its own wrongdoing.[36]

"Neither the Third Circuit nor the district courts have expressly stated a standard to determine the reasonableness of fees and costs in the context of interpleader,"[37] but awarding of such relief is equitable in nature and subject to the discretion of the court.[38] Nevertheless, an award should not "seriously deplete the fund or be excessive, unnecessary or redundant, because the work necessary to bring an interpleader action is minimal."[39]

## III.   DISCUSSION

With those principles in mind, Eagle Forum accepts that the Insurers are disinterested stakeholders, who have deposited the disputed funds with the Court, conceded liability, and have sought discharge.[40] Nevertheless, Eagle Forum asks the Court not to award attorney's fees, because determining the beneficiary of a policy is part of an insurer's "routine course of business."[41]

Eagle Forum relies on cases in other jurisdictions[42] – not binding on this Court – for the argument that stakeholders should not receive fees and costs where the claims arose from the

---

[35] *Reliastar Life Ins. Co. v. Moore,* No. 08-1942, 2010 WL 773457, at *1 (M.D. Pa. Mar. 1, 2010).

[36] *Stonebridge Life Ins. Co. v. Kissinger*, 89 F. Supp. 3d 622, 627–28 (D.N.J. 2015).

[37] *The United States Life Ins. Co. v. Holtzman*, No. 14-113, 2015 WL 7458591, at *3 (D.N.J. Nov. 24, 2015).

[38] *Metro.,* 83 F. App'x at 431; *Banner,* 2014 WL 4724902, at *4.

[39] *See e.g. Holtzman*, 2015 WL 7458591, at *3 (internal quotation marks omitted).

[40] (D.E. 163, Eagle Forum Opp'n).

[41] (D.E. 163, Eagle Forum Opp'n, at 12).

[42] (D.E. 163, Eagle Forum Opp'n, at 13).

stakeholder's routine course of business.[43] Those cases have found that insurers must often "determine the appropriate recipient in a case involving multiple claimants to insurance benefits,"[44] as part of their normal course of business.[45] In turn, those courts have held that it is inappropriate to transfer the costs of making that business decision to the fund or its claimants.[46]

The Courts in this District, however, have rejected the notion "that insurance companies are never permitted to recoup attorneys' fees," and routinely award attorney's fees to insurers.[47] Focusing instead on whether the insurer "acted in a manner that create[d] disputed claims."[48]

In a related argument, Eagle Forum relies on *Reliastar* and *Richmond,* to argue that the Court should deny fees and costs to insurers who "merely" sought to free themselves "from ongoing litigation or the vexation of multiple lawsuits."[49] In *Stonebridge*, this Court rejected that

---

[43] (D.E. 163, Eagle Forum Opp'n, at 15–19) (citing *Bandura v. Fidelity & Guaranty Life Ins. Co.*, 433 F. Supp. 829, 833 (W.D. Pa. 1978); *Reliastar,* 2010 WL 773457; *AIG Life Ins. Co. v. Rafferty,* No. 07-CV-3099, 2008 WL 1959697 (E.D. Pa. May 6, 2008); *SMA Life Assur. Co. v. Piller,* No. 86-2959, 1986 WL 12937 (E.D. Pa. Nov. 13, 1986)).

[44] (D.E. 163, Eagle Forum Opp'n, at 15–16) (citing *Reliastar,* 2010 WL 773457).

[45] *Id.* (citing *Reliastar,* 2010 WL 773457; *Rafferty,* 2008 WL 1959697).

[46] *Id.*

[47] *Banner*, 2014 WL 4724902, at *3; *see e.g. Stonebridge*, 89 F. Supp. 3d at 628; *Metro. Life Ins. Co. v. Teixeira through Sarto*, No. 16-07486, 2017 WL 3951597, at *5 (D.N.J. Sept. 8, 2017); *Holtzman*, 2015 WL 7458591, at *3; *Fid. & Guar. Life Ins. Co. v. D'alessandro,* No. 15-05281, 2015 WL 7776556, at *4 (D.N.J. Dec. 2, 2015); *Nw. Mut. Life Ins. Co. v. Sonia*, No. 14-03787, 2014 WL 5392059 (D.N.J. Oct. 21, 2014); *Guardian Life Ins. Co. of Am. v. Jaye*, No. CIV.A. 10-207, 2010 WL 5392731, at *3 (D.N.J. Dec. 22, 2010).

[48] *Stonebridge*, 89 F. Supp. 3d at 627–28 (citing *Reliastar,* 2010 WL 773457 at *6; *The Prudential Life Ins. Co. of America v. Richmond,* No. 06-525, WL 1959252 (D.N.J. July 2, 2007)).

[49] (D.E. 163, Eagle Forum Opp'n, at 14–15) (citing *Reliastar,* 2010 WL 773457; *Prudential,* 2007 WL 1959252, at *5).

argument, finding that the insurers in *Reliastar* and *Richmond* were responsible in part, for creating the dispute over the proper claimant.[50]

In contrast, the Insurers here bear no responsibility for these disputed claims. The parties agree that Eagle Forum is the proper beneficiary,[51] thus, Eagle Forum argues that the Insurers should have provided the funds, and that any other course of action constitutes vexatious refusal to pay.[52] While this argument is appealing at first glance, it ignores the case's tortured procedural history and the Insurer's precarious position at the beginning of this case.

From the start, it was Plaintiff, Mr. Schlafly, and not the Insurers, that filed suit in state court.[53] Mr. Schlafly filed suit against the Insurers over half a year after Ms. Schlafly's death.[54] At that time, Eagle Forum had not yet completed its claims on either policy, i.e., by having an authorized Eagle Forum officer(s) complete and execute, among other documents, a statement of death benefit form, and providing those forms to the Insurers.[55]

Mr. Schlafly presented potentially viable claims against the Insurers and their policies.[56] According to Mr. Schlafly, the insurers "threatened to pay the proceeds" to individuals who were

---

[50] *Stonebridge*, 89 F. Supp. 3d at 627–28.

[51] (D.E. 166, John Hancock's Reply Br.; D.E. 189, Lincoln's Reply Br.).

[52] (D.E. 163, Eagle Forum Opp'n, at 14).

[53] (D.E. 1, Am. Compl.).

[54] *Id.*

[55] (D.E. 8, John Hancock Answer, at ¶ 31; D.E. 28-2, Raul's Decl., at 2; D.E. 7, Lincoln Answer, at ¶ 37).

[56] (D.E. 1, Am. Compl., at ¶¶ 9–15).

not authorized to control or act on behalf of Eagle Forum.[57] Mr. Schlafly asserts that this fake board of directors has and intends to continue, wrongfully dissipating the assets of Eagle Forum.[58]

The Insurers discovered that Mr. Schlafly was only one of over a dozen parties attempting to assume control over and take actions on behalf of, Eagle Forum and its assets, including its insurance policies, in six different jurisdictions.[59] Lincoln removed the case to federal court and filed for interpleader relief, because it was "unable to determine which of the Claimants are authorized to receive the death benefits . . . and cannot determine to whom these should be paid."[60] Shortly thereafter, John Hancock filed for similar interpleader relief, alleging the same concerns.[61]

By granting the Insurers' motions for discharge,[62] this Court has already found that some of the competing claims were not "clearly devoid of substance," that the Insurers had a legitimate fear of multiple liability, and may have been liable to more than one Claimant.[63] Stated differently, the Insurers had a legitimate fear of paying benefits to the wrong person, officer, or entity at Eagle Forum.

For example, according to Lincoln, the first person who contacted Lincoln about the Lincoln Policy proceeds, Kevin McCann, was acting at the direction of Claimant John Schlafly (then an officer of Eagle Forum and named here as a Claimant in his representative capacities as

---

[57] (D.E. 1, Compl. at, ¶ 10).

[58] (D.E. 1, Am. Compl., at ¶ 13).

[59] (D.E. 7, Lincoln Answer, at ¶¶ 49–58; D.E. 8, John Hancock Answer, at ¶¶ 33–44).

[60] (D.E. 7, Lincoln Answer, at ¶ 64; D.E. 8, John Hancock Answer, at ¶ 49).

[61] (D.E. 8, John Hancock Answer).

[62] (D.E. 185, Order; D.E. 188, Order).

[63] *Stonebridge*, 89 F. Supp. 3d at 626.

an officer or agent of Claimants Eagle Forum Education & Legal Defense Fund, Eagle Trust Fund, and Ms. Schlafly's estate).[64] One court later declared John Schlafly "unwilling and/or incapable" of serving the interests of Eagle Forum and that allowing him to continue to hold himself out as an officer was "detrimental to the status quo, and contrary to the Court's desire to preserve and protect the assets and resources of Eagle Forum."[65] Consequently, had Lincoln paid the proceeds to the first person claiming to act on behalf of Eagle Forum, they might have found themselves subject to multiple or inconsistent liability.

Accordingly, the Court rejects Eagle Forum's argument that the Insurers' "conduct necessitated this interpleader action, and likewise rejects any argument that" the Insurers are not entitled to an award of fees because of said conduct.[66]

The only issue that remains is the amount of reasonable attorney's fees to award to each Insurer. Eagle Forum does not object to any particular time entry, hourly rate, or time spent on any task in these fee applications.[67] In turn, the Court will only consider if the requested fees are "excessive, redundant, or otherwise unnecessary," or if they would "seriously deplete" the fund.[68]

Upon review of Lincoln's detailed fee application, the Court finds that $41,229.71 in fees and costs is reasonable in light of the effort expended by Lincoln's counsel, in this complex and at times contentious case. This case involves five related lawsuits in other jurisdictions and fifteen

---

[64] (D.E. 7, Lincoln Answer, at ¶¶ 33–34).

[65] (D.E. 7, Lincoln Answer, at ¶ 51; D.E. 7-8, Barberis Op., at ¶ 19).

[66] *Stonebridge*, 89 F.Supp.3d at 628.

[67] The Court inquired on two separate occasions, if Eagle Forum wished to supplement its opposition to object to anything specific in these fee applications, but Eagle Forum declined.

[68] *Banner*, 2014 WL 4724902, at *3–4 (citing *Fantaye*, 2009 WL 482699, at *2; *Frontier*, 1992 WL 209299, at *2).

potential claimants, which complicated the ordinarily straightforward interpleader and discharge process.[69] Much of these fees were out of Lincoln's control, in the sense that Lincoln had to respond to the filings of other parties in this matter.[70] In particular, Lincoln explained that nearly half of its requested fees arose in direct response to Eagle Forum's actions and objections, many of which Eagle Forum later withdrew.[71]

Additionally, Lincoln's stake in this matter originally involved two other policies, the Eagle Forum Education and Legal Defense Fund Policy and the Phyllis Schlafly Irrevocable Insurance Trust Policy, but the parties resolved those policy disputes by stipulation, in which Lincoln also waived its right to seek attorney's fees in connection with those policies.[72] As a result, Lincoln did not request fees directly attributable to those policies, and reduced the fees "that could not reasonably be attributed to any policy with particularity," by two-thirds.[73]

Consequently, the Court finds that Lincoln's requested fees in the amount of $41,229.71 in fees and costs are not "excessive, redundant, or otherwise unnecessary."[74] The Court also concludes that at approximately 2% of the $2,000,000.00 fund, the requested fees would not "seriously deplete" those funds.[75]

---

[69] (D.E. 172-2, Rauls Certif., at ¶10).

[70] (D.E. 172-2, Rauls Certif., at ¶ 24).

[71] (D.E. 172-2, Rauls Certif., at ¶¶ 9, 24).

[72] *Id.*

[73] (D.E. 172-2, Rauls Certif. at ¶10).

[74] *Id.*

[75] *See generally Metro.*, 2017 WL 3951597, at *3 (granting fees at 11% of the fund); *Holtzman*, 2015 WL 7458591, at *3 (awarding approximately 10%); *Banner*, 2014 WL 4724902 at *1 (granting fees and costs where the requested fees comprise approximately 1% of the fund);

Turning then to John Hancock's fee application, the Court finds that the requested amount of $109,176.80 is reasonable for substantially the same reasons set forth above.[76] The Court recognizes that John Hancock's requested amount is significantly higher than Lincoln's request, but the Court finds that they would have been comparable absent Lincoln's partial fee waiver.[77] Additionally, this amount, at approximately 8% of $1,422,000.02, would not seriously deplete the fund.[78]

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Lincoln and John Hancock's motions for attorneys' fees and costs be **GRANTED**. As such, the undersigned recommends that the Court award Lincoln $41,229.71 and John Hancock $109,176.80, out of the respective policy proceeds[79] previously deposited into the Registry of the Court. The parties have fourteen days to file and serve any objections to this report and recommendation.[80] "The District

---

*Fantaye*, 2009 WL 482699, at *1–3 (awarding attorneys' fees in an interpleader action that amounted to approximately nine percent of the interpleader fund);

[76] (D.E. 156-5, Goldstein Certif., at ¶ 29).

[77] (D.E. 147, Stipulation and Order, at 4).

[78] *See Metro.*, 2017 WL 3951597, at *3 (granting fees at 11% of the fund); *Holtzman*, 2015 WL 7458591, at *3 (rejecting a request for 17% and reducing the award to approximately 10% of the fund); *Fantaye*, 2009 WL 482699, at *1–3 (awarding attorneys' fees in an interpleader action that amounted to approximately 9% of the interpleader fund).

[79] (D.E. 23, John Hancock Proceeds Deposit; D.E. 27, Lincoln Proceeds Deposit).

[80] 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

Court need not consider frivolous, conclusive, or general objections."[81]



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

5/21/2018 11:52:20 AM

Original: Clerk of the Court
Hon. Esther Salas, U.S.D.J.
cc: All parties
    File

---

[81] *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).